1  Stephen B. Morris (SBN 126192)
   **MORRIS and ASSOCIATES**
2  444 West C Street, Suite 300
   San Diego, California 92101
3  (619) 239-1300

4  Walter Haines, Esq. (CSB #71075)
   **UNITED EMPLOYEES LAW GROUP**
5  65 Pine Ave, #312
   Long Beach, California 90802
6  Telephone:(877) 696-8378
   Facsimile: (562) 256-1006
7
   Attorneys for Plaintiffs
8

9  R. Brian Dixon, Bar No. 076247
   Laura E. Hayward, Bar No. 204014
   **LITTLER MENDELSON, APC**
10 650 California Street, 20th Floor
   San Francisco, CA 94108
11 Telephone: (415) 433-1940

12 Attorneys for Defendant

13
                **UNITED STATES DISTRICT COURT**
14
               **NORTHERN DISTRICT OF CALIFORNIA**
15

16
   RICHARD HOM, an individual on        )   CASE NO. C 08-03756 JL
17 behalf of himself and JUSTIN         )
   KELLEY, an individual, on behalf of  )
18 himself, and on behalf of all persons )  NOTICE OF MOTION AND
   similarly situated,                  )   MOTION FOR FINAL APPROVAL
19                                       )   OF CLASS ACTION SETTLEMENT;
                Plaintiff,               )   MEMORANDUM OF POINTS AND
20                                       )   AUTHORITIES IN SUPPORT
   vs.                                   )   THEREOF
21                                       )
   DHL EXPRESS (USA), INC., an Ohio      )   Date:      April 14, 2010
22 corporation conducting business in the )  Time:      9:30 a.m.
   State of California, and Does 1 to 10. )  Room:      Courtroom F
23                                       )   Judge:     Honorable James Larson
                Defendants.              )
24 _____      )

25

26      TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE

27 ATTORNEYS OF RECORD:

28      PLEASE TAKE NOTICE that on April 14, 2010, at 9:30 a.m. or as soon

---

thereafter as the matter can be heard, before Honorable James Larson, Courtroom F of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Richard Hom and Justin Kelley, individually and on behalf of the putative class (collectively, "Plaintiffs") and Defendant DHL Express (USA) Inc. ("DHL") will, and hereby do, jointly move this Court for final approval of the class action settlement in this action.  DHL does not oppose Plaintiff's request for attorneys' fees and costs.

This motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure on the grounds that the settlement is fair, reasonable, and adequate to members of the class.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in Support thereof; the Declaration of Stephen B. Morris filed concurrently herewith as well as the prior filed Declarations of Stephen B. Morris and R. Brian Dixon filed in Support of the Motion for Preliminary Approval of Settlement on November 19, 2009; and the pleadings, records and files herein, and upon such further matters as may be brought before the Court at or prior to the hearing of the Motion.


DATED:    March 8, 2010                          MORRIS and ASSOCIATES


                                        By: _____
                                             STEPHEN B. MORRIS
                                             Attorneys for Plaintiffs


DATED:    March __, 2010                         LITTLER MENDELSON, APC


                                        By: _____
                                             LAURA E. HAYWARD
                                             R. BRIAN DIXON
                                             Attorneys for Defendant

# TABLE OF CONTENTS

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  FACTUAL BACKGROUND.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

   A.  PROCEDURAL HISTORY AND INVESTIGATION. . . . . . . . . . . . .  2

   B.  THE PARTIES' CLAIMS AND DEFENSES.. . . . . . . . . . . . . . . . . .  3

   C.  SETTLEMENT NEGOTIATIONS. . . . . . . . . . . . . . . . . . . . . . . . .  6

      D.  Terms of the Settlement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      1.  Monetary Relief to Class Members.. . . . . . . . . . . . . . . . . . .  7

      2.  Class Representative Payment.. . . . . . . . . . . . . . . . . . . . . . . .  9

      3.  Class Counsel Attorneys' Fees and Costs Payment. . . . . . . . .  9

      4.  PAGA Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

III.  ALL COURT ORDERED AND STATUTORY NOTICES HAVE BEEN

   GIVEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

   A.  THE NOTICE PROCEDURES REQUIRED BY THIS COURT HAVE

      BEEN CARRIED OUT AND SATISFY DUE PROCESS

      REQUIREMENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV.  FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE. . . . . .  11

   A.  STANDARD FOR APPROVAL.. . . . . . . . . . . . . . . . . . . . . . . . . .  11

   B.  THE SETTLEMENT SHOULD BE PRESUMED FAIR. . . . . . . . . .  13

   C.  THE RISKS INHERENT IN CONTINUED LITIGATION FAVOR

      FINAL APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

   F.  THE POSITIVE REACTION OF THE CLASS SUPPORTS

      APPROVAL OF THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . .  17

G.    THE RECOMMENDATIONS OF EXPERIENCED COUNSEL
      FAVOR APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.   THE COURT SHOULD APPROVE THE ENHANCEMENTS,
     ATTORNEY'S FEES AND COSTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     A.    THE ENHANCEMENTS TO THE CLASS REPRESENTATIVES
           ARE REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
           1.    The Result Achieved for Members of the Class. . . . . . . . . . . 20
           2.    The Effort, Experience and Skill of Class Counsel. . . . . . . . . 20
           3.    The Complexity of the Issues. . . . . . . . . . . . . . . . . . . . . . . . 21
           4.    The Risks of Non-Payment Assumed by Counsel. . . . . . . . . 21
           5.    The Reaction of the Class. . . . . . . . . . . . . . . . . . . . . . . . . . 22
           6.    Comparison with Counsel's Lodestar. . . . . . . . . . . . . . . . . . 22

VI.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
     APPROPRIATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**CASES:**

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*7 Eleven Owners for Fair Franchising v. Southland Corp.,*
   85 Cal. App. 4th 1135 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Accord Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979). . . . . . . . . . . . . . . . . . . . . . . 14, 17, 18

*Brewer v. Southern Union Co.,*
   607 F. Supp. 1511 (D. Colo. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Church v. Consolidated Freightways, Inc.,*
   No. C-91-4168-DLJ, C-90-2290-DLJ,
   1993 WL 149840 (N.D. Cal. May 3, 1993). . . . . . . . . . . . . . . . . . . . . . . 12

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 17

*Dunbar v. Albertson's, Inc.,*
   141 Cal. App. 4th 1422 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fischel v. Equitable Life Assurance Society of U.S.,*
   307 F.3d 997 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re General Motors Corp.,*
   55 F.3d 768 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403
   (C.D. Cal. June 10, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

*In re Immune Response Sec. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re King Resources Co. Sec. Litig.,*
   420 F. Supp. 610 (D. Colo. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Omnivision Technologies, Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Rite Aid Corp. Sec. Litig.,*
   396 F.3d 294 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   720 F. Supp. 1379 (D. Ariz. 1989), *aff'd*
   *sub nom., Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 19

*Ingram v. Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jimenez v. Domino's Pizza, Inc.,*
   238 F.R.D. 241 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lachance v. Harrington,*
   965 F. Supp. 630 (E.D. Pa. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Linney v. Cellular Alaska Partnership,*
   151 F.3d 1234 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Murphy v. Kenneth Cole Prod., Inc.,*
   40 Cal. 4th 1094 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982). . . . . . . . . . . . . . . . 11, 12, 15, 16, 17

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 20

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ramirez v. Yosemite Water Co.,*
   20 Cal. 4th 785 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sav-On Drug Stores v. Superior Court,*
   34 Cal. 4th 319 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Six Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Trist v. First Fed. Sav. & Loan Ass'n of Chester*,
 89 F.R.D. 8 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 15

*Vinole v. Countrywide Home Loans, Inc.*,
 246 F.R.D. 637 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 20, 21, 22

*Young v. Katz*,
 447 F.2d 431 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15


**STATUTES:**

California Labor Code § 2698, *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

California Labor Code § 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Fed. R. Civ. P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 19, 23


**OTHER AUTHORITIES:**

4 NEWBERG ON CLASS ACTIONS § 11.41 (1992 & Supp. 2002) . . . . . . . . . . .  11, 16

MANUAL FOR COMPLEX LITIGATION § 21.62 . . . . . . . . . . . . . . . . . . . . . . . . . .  18

MANUAL FOR COMPLEX LITIGATION, FOURTH
 (Fed. Judicial Center 2004), §§ 21.6 *et seq.* . . . . . . . . . . . . . . . . . . . . . . .  11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

The settlement of this wage and hour class action resolves litigation over Plaintiffs' central claim that their employer, Defendant DHL EXPRESS (USA), INC.("Defendant" or "DHL"), misclassified its Field Service Supervisors as exempt employees and failed to pay them overtime in accordance with California law.  On or about November 20, 2009, the Court granted preliminary approval of the parties' stipulated settlement in the total amount of up to Seven Hundred Forty Thousand ($740,000) dollars ("Settlement").  Thereafter, in accordance with the Court's Order Granting Preliminary Approval dated November 20, 2009, the approved Class Notice, Claim Form and Exclusion Form were mailed to approximately 269 Class Members.  As of the date of the filing of this Motion, 171 Class Members or approximately 63% of the total class have filed claims, claiming approximately 76% of the net settlement.  *See* Lenhart Decl. at ¶10.  Not a single objection to the Settlement has been filed, and only five (5) class members (about 1% of the class) have excluded themselves from the Settlement.

The Settlement provides reasonable monetary benefits to the Class Members in light of the risks of continued litigation and the defenses raised by Defendant, and is the product of diligent efforts by Class Counsel to obtain the best possible result for the Class.  Upon the Court granting final approval of the Settlement, the Class Members who submitted accepted claims will, on average, receive approximately $1,709.24 each.  Because the Settlement is fair, adequate and reasonable, and is the product of extensive arms-length negotiations, final approval should now be granted.

Additionally, Plaintiffs seek an award of attorneys' fees for Class Counsel, the law firms of Morris and Associates and United Employee Law Group, in the amount of $185,000.  This award is twenty-five percent (25%) of the settlement

fund, which the Ninth Circuit considers to be the "benchmark" for such awards. Significantly, no class member has objected to this attorneys' fees award. Plaintiffs also seek reimbursement of $10,000.00 in costs.

## II. FACTUAL BACKGROUND.

### A. PROCEDURAL HISTORY AND INVESTIGATION.

Plaintiffs Richard Hom and Justin Kelley filed this lawsuit in the Northern District of California on August 6, 2008. The Complaint alleged that Plaintiffs were entitled to overtime pay under the Fair Labor Standards Act, and overtime pay, compensation for missed meal and rest periods, waiting time penalties, penalties for inaccurate itemized wage statements pursuant to the California Labor Code and restitution and injunctive relief in accord with California Business and Professions Code section 17200, as well as interest and attorneys fees. While the Complaint was initially filed on behalf of a nationwide class, on May 15, 2009, the Court signed an Order Dismissing the FLSA Cause of Action and references to a nationwide class pursuant to the parties' joint request. Thereafter, the lawsuit has been pursued on behalf of California employees only. *See* Morris Decl. at ¶2.

After completing several key depositions and engaging in initial written discovery, the Parties agreed to engage in mediation. In anticipation of the mediation, counsel for DHL provided Class Counsel with substantial information regarding the number of putative class members, their average rate of pay, and the average number of weeks each putative class member worked within the limitations period. Class Counsel also conducted an independent investigation into the underlying facts by informally obtaining relevant facts, reviewing additional relevant documents, and researching the applicable law and the potential defenses. *See* Morris Decl. at ¶¶7-9.

## B.   THE PARTIES' CLAIMS AND DEFENSES

DHL is a global provider of international road, air and rail-based courier and express services for business and private customers.  In early 2009, DHL discontinued its domestic services within the U.S. and shifted its focus to international services.  Plaintiffs Hom and Kelley and the settlement Class that they represent are approximately 270 current and former exempt DHL employees who were employed as Field Services Supervisors.

Field Services Supervisors are primarily in charge of managing several categories of hourly employees to ensure that DHL's operations are carried out in a deadline driven environment.  Those categories of employees include: (1) couriers who deliver packages, (2) dockworkers who unload/load or sort packages, and (3) agents who deal with routine customer inquiries.  Field Services Supervisors are classified as exempt from overtime and other wage and hour laws pursuant to the "executive exemption."[1]

California Labor Code section 515(a) and the Industrial Welfare Commission's Wage Orders provide that the overtime requirements of California law do not apply to "persons employed in administrative, executive, or professional capacities." Wage Order 7-2001, §1(A)(1)  An executive employee is one who:

(a)     is primarily engaged in the management of the enterprise or of a customarily recognized department or subdivision thereof; and

(b)     customarily and regularly directs the work of at least two or more other employees; and

(c)     has the authority to hire or fire other employees or

---

[1]     In addition to the executive exemption, DHL believes that the administrative exemption would cover the Field Services Supervisors position in that Field Services Supervisors perform office or non-manual work directly related to the management policies or general business operations of DHL and its customers. *See e.g. Mitchell v. Branch Motor,* 168 F. Supp 72 (E.D. Pa. 1958) (finding dispatchers who supervised pick-up and deliveries to be exempt under the FLSA administrative exemption on the basis that the dispatcher's primary duty consisted of the performance of office or non-manual field work directly related to management policies or general business operations of his employer).

whose suggestions and recommendations in this regard are given particular weight; <u>and</u>

(d)     customarily and regularly exercises discretion and independent judgment; <u>and</u>

(e)     who spends more than 50% of their time engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 CFR §§ 541.102, 541.104-111, 541.115-116.  Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the work week must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f)     such an employee must also earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.  Full-time employment is defined in Labor Code § 515(c) as 40 hours per week.

Wage Order 7-2001"7-2001" , § 1(A)(1).

Plaintiffs contend that they were incorrectly classified as exempt employees. They contend that they did not meet the test for the exemption in part because they did not have sufficient independent judgment and discretion in carrying out their job duties and because they did not spend more than 50% of their time performing exempt tasks.  Plaintiffs claimed that as all Field Services Supervisors were performing essentially the same job functions their claims are appropriate for class treatment. At all points during this litigation, DHL disputed, and it continues to dispute, Plaintiffs' allegations, expressly denying any liability for any of the claims that Plaintiffs or the Class have raised or could have raised.  *See* Morris Decl. at ¶¶3-4.

Although Class Counsel believes that Plaintiffs would be able to certify the Class, Class Counsel is cognizant of the significant legal uncertainties associated

with class action misclassification cases.  Such claims can be factually complex and require protracted litigation to resolve.  Moreover, DHL through its counsel, has presented several good faith objections to Plaintiffs' ability to certify the class. For example, DHL maintains that resolution of these issues requires an individualized analysis of how each class member carries out his or her job duties and responsibilities, because each Field Service Supervisor has a unique experience based upon the location and size of their station, their work schedule, the management style of their supervisor, the number of employees they supervise and the presence of unionized employees and/or independent contractors at their station.  *See* Morris Decl. at ¶5.

While Class Counsel again believes that Plaintiffs could prevail on the merits of their claims, particularly as exempt status is narrowly construed under California law, Plaintiffs recognize that it would require a considerable showing in order to overcome DHL's significant defenses to their misclassification claim.  To begin, DHL has indicated that many of the DHL locations are covered by collective bargaining agreements containing a work preservation clause.  As a result, non-bargaining unit employees, such as the Field Services Supervisors, are prohibited from performing non-exempt bargaining unit work such as moving, sorting or driving packages or dealing with routine customer inquiries.   Second, DHL presented evidence that the Company's expectation is that Field Service Supervisors are performing an exempt job.  The Field Services Supervisor job description and management training, the annual reviews which assess their abilities with respect to performance of exempt job functions, coupled with the deposition testimony of DHL managers Jeff Funk and John Fasullo make it clear that DHL considers the Field Services Supervisor part of the station's management team.  Third, DHL presented evidence that many Field Services Supervisors interviewed by counsel attested to the fact that they were indeed performing their jobs in an exempt manner.  DHL argued that to the extent that Plaintiffs contend

they spent significant time performing non-exempt work, they did so in contravention of the Company's legitimate and communicated expectations. *See* Morris Decl. at ¶6. As a matter of law, a failure to carry out certain duties or excessive delegation of others cannot be used to support an overtime claim. *See Sav-On Drug Stores v. Superior Court,* 34 Cal. 4th 319, 342 (2004) ("the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations.") Courts have recognized that an employee cannot reclassify themselves by "dumbing down" their position to a non-exempt position. *See e.g., Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 802 (1999) (holding that the court should consider not only how the employee actually spends his or her time, but also whether the employee's practice diverges from the employer's realistic expectations in determining the employer's responsibility for overtime hours).

Ultimately, Class Counsel understands that if the case is not settled now, it might not result in any recovery or might result in a recovery several years from now that is less favorable to the Class than that offered by the Settlement. In light of such considerations, Class Counsel is satisfied that the terms and conditions of the Settlement are fair, reasonable and adequate and that the Settlement is in the best interests of the Class. *See* Morris Decl. at ¶15.

### C.   SETTLEMENT NEGOTIATIONS

On August 6, 2009, the Parties attended a mediation session presided over by Michael Loeb of JAMS, a mediator with significant experience in wage and hour class actions. Each Party was represented by their respective counsel during the good-faith negotiations facilitated by Mr. Loeb. While the Parties were unable to reach agreement at the mediation, the Parties continued to negotiate for several weeks following the mediation, assisted by Mr. Loeb. At the conclusion of the additional negotiations, on September 4, 2009, the Parties signed a Memorandum of Understanding outlining the key elements of the agreed upon settlement. *See*

1    Morris Decl. at ¶8.

2

3        **D.    Terms of the Settlement**

4        DHL has agreed to pay up to $740,000 (the "Maximum Gross Settlement

5    Amount") to settle this matter.  This sum is inclusive of the following: (a) the

6    Maximum Settlement Distribution Amount payable to Class Members; (b) the

7    Class Representative Payments to the two Class Representatives in the amount of

8    up to Eight Thousand Five Hundred Dollars ($8,500) each; (c) Class Counsel's

9    attorneys' fees in the amount of up to One Hundred Eighty Five Thousand Dollars

10   ($185,000), costs and expenses associated with the Action in an amount of up to

11   Ten Thousand Dollars ($10,000), incurred or to be incurred in the Settlement of the

12   Action, and any appeals; (d) the PAGA Payment of Twenty Thousand Dollars

13   ($20,000); (e) the fees and expenses of the Claims Administrator not to exceed

14   Twenty Thousand Dollars ($20,000); (f) the employee portion of all applicable tax

15   withholdings including, but not limited to, FICA, FUTA and other employment

16   related taxes and withholding of federal, state and local income taxes; and (g) the

17   amount of up to Twenty-Eight Thousand Dollars ($28,000) as and for the

18   employer's share of FICA, FUTA, and all other state and federal payroll taxes and

19   deductions for the wage portion of the Settlement Payments.

20       **1.    Monetary Relief to Class Members**

21       The maximum amount available to pay timely, valid claims of Participating

22   Class Members and the employee's share of payroll taxes due on such payments is

23   Four Hundred Sixty Thousand Dollars ($460,000) (the "Maximum Settlement

24   Distribution Amount").

25       The Parties' Settlement sets forth a formula for determining the Gross

26   Settlement Amount that will be paid to each Class Member who has timely

27   submitted a valid Claim Form.  Specifically:

28       a.    The total number of Compensable Weeks Employed by all of the

Class Members shall constitute the "Total Compensable Weeks".

b.   The "Dollars Per Week" will be calculated by dividing the Total Compensable Weeks into the Maximum Settlement Distribution Amount.

c.   The portion of the Maximum Settlement Distribution Amount allocated to each Participating Class Member who timely submits a valid Claim Form, will be calculated by multiplying the Dollars Per Week by the total Compensable Weeks Employed by that Participating Class Member. The result shall be the Gross Settlement Payment to that Participating Class Member. The Gross Settlement Payment to an individual Participating Class Member shall be allocated between taxable and non-taxable consideration as provided in the Settlement.

d.   If less than sixty (60) percent of the Maximum Settlement Distribution Amount is claimed in Gross Settlement Payments to Participating Class Members (after all duly completed and timely Claim Forms have been considered and all challenges have been resolved), the Parties will instruct the Claims Administrator to increase the amount to be distributed to Participating Class Members so that no less than sixty (60) percent of the Maximum Settlement Distribution Amount is distributed to Participating Class Members as Gross Settlement Payments. The increase in the amount distributed shall be made on a pro rata basis proportionate to the amounts claimed by each Participating Class Member. If sixty (60) percent or greater of the Maximum Settlement Distribution Amount has been claimed by Participating Class Members, no increase in the amount to be distributed shall occur. DHL shall not be obligated to pay any

other amount to Class Members.

*See* Settlement at ¶¶33-34.

As more than 60% of the Maximum Settlement Distribution Amount was claimed by Participating Class Members, no increase in the Gross Settlement Payments is necessary and no such increase will occur.

### 2.    Class Representative Payment

Plaintiffs Hom and Kelley each seek a class representative payment of Eight Thousand Five Hundred Dollars ($8,500) in recognition of their time and efforts on behalf of the Class (including providing relevant documents, numerous, regular and detailed discussions with Class Counsel, and appearing for depositions) and the risk they assumed of costs and other liabilities if the case proved unsuccessful. This amount is separate and apart from any other recovery to which Plaintiffs Hom and Kelley will be entitled under the Settlement as Class Members.

### 3.    Class Counsel Attorneys' Fees and Costs Payment

Fees in an amount of $185,000, which is 25% of the $740,000 maximum settlement amount are requested.  This sum is consistent with the Ninth Circuit's standard "benchmark" of 25% as fair and reasonable as a percentage of recovery for a common fund attorneys' fee award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Class Counsel will also seek $10,000 to reimburse them for out of pocket expenses incurred during this Action.

DHL does not oppose Plaintiffs' application for fees and costs.

### 4.    PAGA Payment

The Parties have allocated $20,000 to be remitted to the California Labor and Workforce Development Agency for the resolution of the Class Members' claims under the California Private Attorney General Act ("PAGA"), California Labor Code Section 2698, *et. seq.*

---

**III.   ALL COURT ORDERED AND STATUTORY NOTICES HAVE BEEN GIVEN.**

   **A.   THE NOTICE PROCEDURES REQUIRED BY THIS COURT HAVE BEEN CARRIED OUT AND SATISFY DUE PROCESS REQUIREMENTS.**

The Preliminary Approval Order, setting out procedures for giving notice to class members, has been fully carried out pursuant to its terms.  The Preliminary Approval Order appointed Gilardi & Co., LLC as Claims Administrator and directed them to mail the Notice, including the Claim and Exclusion Forms (collectively, "Notice Packet"), to all Class Members.  This mailing took place on or about December 28, 2009 when 269 Notice Packets were mailed to Class Members.  *See* Preliminary Approval Order ¶¶ 5-6.

Of the 269 Notice Packets that were mailed, approximately six (6) Notice Packets were originally returned as undeliverable.  Lenhart Decl. ¶ 5.  In an attempt to obtain forwarding addresses for the returned Notice Packets, Gilardi used a third party locator service and five (5) Notice Packets were re-mailed using the new addresses.  *Id.* at ¶ 5.   Only one (1) Notice Packet was ultimately undeliverable.

Pursuant to the terms of the Settlement, timely claim and exclusion forms were required to be postmarked on or before February 26, 2010.  The deadline for serving and filing objections was February 11, 2010, and therefore is now closed.  Lenhart Decl.¶¶ 8, 12  One hundred seventy one (171) Class Members have submitted Claim Forms, of which none were untimely or otherwise deficient but have been accepted by the parties.  Lenhart Decl. ¶ 8  Also, only five (5) class members submitted a Request for Exclusion form.  *Id.* at ¶ 11.  The Claims Administrator received no Objections to the Settlement in response to the Notice, and none have been served on the parties or filed with the Court. *Id.* at ¶ 12.

The provision of notice to Class Members and administration of the notice process as described above meets the requirements for the "best notice practicable"

in this case as necessary to protect the due process rights of class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent class members have been given the opportunity to participate fully in the claims, exclusion, and the approval process.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

### A.   STANDARD FOR APPROVAL.

On a motion for final approval of a class action settlement under Fed. R. Civ. P. 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." MANUAL FOR COMPLEX LITIGATION, FOURTH (Fed. Judicial Center 2004) ("MANUAL"), §§ 21.6 *et seq.* at 309. The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 NEWBERG ON CLASS ACTIONS § 11.41 (1992 & Supp. 2002) (and cases cited); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Although the Court possesses "broad discretion" in determining that a proposed class action settlement is fair, the Court's role "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted). Accordingly, the Court should give due regard to what is otherwise a "private consensual agreement" between the parties. *See Church v. Consolidated Freightways, Inc.*, No. C-91-4168-DLJ, C-90-2290-DLJ, 1993 WL 149840 (N.D. Cal. May 3, 1993); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it.  The judge cannot rewrite the agreement.").  A court's approval of a class action settlement will only be reversed for a clear abuse of discretion.  *See Officers for Justice*, 688 F.2d at 626 ("[W]e reverse only upon a strong showing that the district court's decision was a clear abuse of discretion"); *City of Seattle*, 955 F.2d at 1276; *Ackerman v. Kassar*, 5 F.3d 534 (9th Cir. 1993); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998).

In determining whether the settlement is "fair, adequate, and reasonable," this Court should balance several factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the

1    proposed settlement.

2   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Molski v.*

3   *Gleich*, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that court need only consider

4   some of these factors – namely, those designed to protect absent class members).

5   An analysis of the applicable *Hanlon* factors dictates that this settlement should be

6   given final approval as discussed more fully below.

7

8   **B.    THE SETTLEMENT SHOULD BE PRESUMED FAIR**

9          The Court should begin its analysis with a presumption that the settlement is

10  fair.  A presumption of fairness exists where:  (1) the settlement is reached through

11  arm's length bargaining; (2) investigation and discovery are sufficient to allow

12  counsel and the court to act intelligently; (3) counsel is experienced in similar

13  litigation; and (4) the percentage of objectors is small.  *See, e.g.*, *Dunk v. Ford*

14  *Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *7 Eleven Owners for Fair*

15  *Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000);  *Accord Ellis*

16  *v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980);  *In re Washington*

17  *Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. at 1387.

18         Here, all four factors are present.  First, extensive arm's length settlement

19  negotiations were conducted under the supervision of a respected and experienced

20  mediator, Michael Loeb.  MorrisDecl.¶ 8.  As explained in more detail in the

21  Preliminary Approval Motion, the Settlement was the product of negotiation

22  between highly able and experienced attorneys on both sides, possessed of

23  extensive documents and factual information which they had carefully analyzed.

24  The presumption of fairness and adequacy is particularly appropriate here because

25  of positive reaction of the class members.  Only five (5) Class Members (about 2%)

26  submitted requests to be excluded and no class member objected to the Settlement.

27  Lenhart Decl.¶¶ 11-12.  Accordingly, this Court should presume that this

28  settlement is fair.

1
2

## C.   THE RISKS INHERENT IN CONTINUED LITIGATION FAVOR FINAL APPROVAL.

3
4
5
6
7
8
9
10

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *See also In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." (internal citations omitted));  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975);  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

11
12
13
14
15
16
17
18
19
20
21
22
23

This factor supports final approval here, where the Settlement affords the Class prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Class from obtaining any recovery at all.  While Class Counsel believes the class claims are meritorious, they are experienced and realistic, and understand that the resolution of the misclassification issue and other key issues, the outcome of a trial, and the outcome of any appeals that would inevitably follow if the Class prevailed at trial, are inherently uncertain in terms of both outcome and duration.  These risks must be considered in assessing the fairness of the Settlement, which guarantees against a result that would leave the Class without substantial recovery from Defendant.  Because the settlement provides immediate and substantial relief, without the attendant risks and delay of continued litigation, it warrants this Court's approval.[2]

24

---

25
26
27
28

[2]   Moreover, the *Hanlon* factor of "the risk of maintaining class action status throughout the trial" supports a finding that the settlement here is fair and reasonable.  *See Hanlon*, 150 F.3d at 1026.  Although the parties dispute the merits of class certification, a number of recent cases have declined to certify misclassification cases in similar circumstances.  *See, e.g.*, *Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1426-28 (2006); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 254 (C.D. Cal. 2006); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637 (S.D. Cal. 2007).  *But see Murphy v. Kenneth Cole Prod., Inc.*, 40 Cal. 4th 1094 (2007).

---

### D.    THE COMPLEXITY, EXPENSE, AND LIKELY DURATION OF CONTINUED LITIGATION FAVORS FINAL APPROVAL.

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *See Officers for Justice*, 688 F.2d at 625.  In applying this factor, the Court must weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g.*, *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The policy that favors settlements of class actions and other complex cases applies with particular force in this case.[3]  Employment cases, and specifically wage and hour cases, are expensive and time-consuming.  That this is a class action further amplifies the economies of time, effort and expense achieved by this settlement.  The alternative to a class action – individual litigation – would tax private and judicial resources over a period of years, and, given the relatively modest amount of damage each Class Member has incurred, be uneconomical even for those with the finances, sophistication, and tenacity to secure individual legal representation.  The Settlement, on the other hand, provides to all Class Members, regardless of their means, reasonable relief in a prompt and efficient manner.  Were the Court to deny final settlement approval, the Class Members would be left without a remedy as a practical matter and courts across the state would have to address the issues presented here in a piecemeal, costly, and time-consuming manner.  The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

---

[3]    *See, e.g.*, *Lachance v. Harrington*, 965 F. Supp. 630, 644 (E.D. Pa. 1997) ("One of the major reasons courts encourage settlement is to reduce the cost of litigation."); *see also* Fed. R. Civ. P. 16(b) advisory committee's note ("since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage in the litigation as possible.").

---

1976 (footnote omitted); *see also* 04 NEWBERG § 11.41 (citing cases).

Moreover, litigating complex wage and hour claims requires substantial and expensive discovery and pre-trial motions, as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence and the preparation and analysis of expert reports. Trial itself could require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the parties and the court system.

## E.   THE VALUE OF THE SETTLEMENT FAVORS FINAL APPROVAL.

The value of the Settlement here is reasonable. Assuming the Court approves the amounts requested, the average per-Claimant recovery is estimated to be approximately $1,709.24. This recovery figure may be less than Plaintiffs contend they are entitled to receive if they were to prevail, but is a reasonable recovery in light of DHL's vigorous defenses on the merits of Plaintiff's claims, including Defendants' position that the Field Service Supervisors are correctly classified as exempt and that certifying a class will be difficult.

Thus, this settlement's fairness must be judged as "'a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation. . . .'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska Partnership*, 151 F.3d

1234, 1242 (9th Cir. 1998).  Therefore, the settlement amount is well within the range of reasonableness.

## F.    THE POSITIVE REACTION OF THE CLASS SUPPORTS APPROVAL OF THE SETTLEMENT.

The response to the Class Notice supports approval of the settlement.  There have been no objections filed in response to the Notice.  Moreover, only five (5) Class Members (about 2% of the class) excluded themselves from the settlement. Lenhart Decl. ¶ 11.  The Court may appropriately infer that a class action settlement is fair, adequate and reasonable when, among other reasons, few class members object to it.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  In fact, a court may even approve a class action settlement over the objections of a significant number or percentage of class members.  *Id.*  Here, the Court should construe the lack of any expressed opposition to the settlement by the Class, and the minimal rate of exclusion requests, as a strong indication that Class Members themselves view the settlement as fair, adequate and reasonable.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-20 (C.D. Cal. 2004).

## G.    THE RECOMMENDATIONS OF EXPERIENCED COUNSEL FAVOR APPROVAL.

The judgment of experienced counsel regarding the settlement is entitled to great weight.  *See Officers for Justice*, 688 F.2d at 625; *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 617; *Linney*, 151 F.3d at 1242.  Here, counsel for both parties

endorse the Settlement as fair, adequate, and reasonable. Morris Decl. ¶ 7. In addition, the recommendation of Class Counsel should be given a presumption of reasonableness. *See*, *e.g.*, *Boyd*, 485 F. Supp. at 622. Class Counsel have extensive experience in prosecuting and litigating class action lawsuits like this one and specific prior experience in litigating employment claims. Morris Decl. ¶ 10, Exh. 1. Class Counsel have conducted extensive investigation of this case. Morris Decl. ¶ 9. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

## V. THE COURT SHOULD APPROVE THE ENHANCEMENTS, ATTORNEY'S FEES AND COSTS.[4]

### A. THE ENHANCEMENTS TO THE CLASS REPRESENTATIVES ARE REASONABLE.

An enhanced payment made to the named representatives of $8,500 each to Plaintiffs Richard Hom and Justin Kelley should be approved for their time and efforts on behalf of the Class. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quotation omitted); *see also* MANUAL § 21.62 n.971 (noting that such awards "may sometimes be merited for time spent meeting with class members, monitoring cases or responding to discovery").

The Court preliminarily approved that Plaintiffs each would receive the sum not to exceed $8,500 for their time and effort in prosecuting this case. Plaintiffs regularly communicated with their counsel to review the status of the case, the pleadings, documents produced by Defendant and both were deposed by

---

[4] This section is submitted by Plaintiffs. Defendant does not object to such awards.

Defendant.  As a result of Plaintiffs' action, approximately 168 Class Members will receive a recovery which is reasonable under the circumstances.  Further, Plaintiffs bore the entire risk associated with not prevailing.  In short, Plaintiffs' request for an enhancement of $8,500 each for two (2) named class representatives is reasonable given the good settlement result, the amount of time they expended and the risks taken for filing the complaint.

**B.    THE ATTORNEYS' FEES AND COSTS REQUESTED ARE REASONABLE IN LIGHT OF THE CIRCUMSTANCES OF THIS LITIGATION.**

Federal Rule of Civil Procedure 23(h) provides that "[i]n an action certified as a class action, the court may award reasonable attorneys' fees and nontaxable costs authorized by law or by agreement of the parties . . . "  FED. R. CIV. P. 23(h).  As stated by the United States Supreme Court, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fees from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The doctrine is founded upon the principle that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

"In assessing attorneys' fees, courts typically apply either the percentage-of-recovery method or the lodestar method.  The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3rd Cir. 2005) (quotations and citation omitted).  The Ninth Circuit has noted that, in class actions "fee awards range from 20 percent to 30 percent of the fund created."  *Paul,*

*Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The court additionally noted with approval "that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."  *Id.  See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (affirming the benchmark rate of 25% as the starting point for common fund fee analysis after taking into account "all of the circumstances of the case.").

In determining whether the "benchmark" percentage should be adjusted, Courts may consider:  (1) the result obtained for the class, (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skills; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).  Because these factors weigh heavily in Class Counsel's favor, Class Counsel herein submits that a request for an award of attorneys' fees in the amount of $185,000, which is 25% of the Total Settlement Amount, is appropriate.  Documented costs in the amount of $10,000 also should be awarded.  Morris Decl. ¶ 24, Exhibit "2".

### 1.    The Result Achieved for Members of the Class

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained");  *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").  Here, Class Counsel achieved a reasonable settlement in light of all factors.  Morris Decl. ¶ 9.

### 2.    The Effort, Experience and Skill of Class Counsel

Class Counsel's lengthy experience, background and skills that they brought to this lawsuit are detailed in the supporting declarations.  Morris Decl. ¶ 10, Exhibit "1".  Moreover, the results achieved in this case are themselves persuasive

evidence of Class Counsel's skills.  *See In re Heritage Bond*, 2005 WL 1594403, at *19.  Altogether Class Counsel billed substantial time to this matter, using significant resources of their offices.

Additionally, Class Counsel conducted extensive investigation, reviewed and analyzed documents, and engaged in mediation and extensive settlement negotiations with counsel for Defendant.  Morris Decl. ¶¶ 7-9.  Finally, "the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work."  *In re Heritage Bond*, 2005 WL 1594403, at *20.  Defendant was represented by highly skilled and respected counsel who vigorously and skillfully defended their client.  In short, the effort, skills, and experience of Class Counsel weigh in favor of the requested fee award.

### 3.   The Complexity of the Issues

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award."  *In re Heritage Bond*, 2005 WL 1594403, at *20.  Like all wage and hour cases, the  issues in this case were difficult and complex, arguing in favor of the requested fee award.

### 4.   The Risks of Non-Payment Assumed by Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1049-50; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).  Class Counsel carried on the litigation on a wholly contingent basis even though they understood that they were embarking on complex, expensive and lengthy litigation (with no guarantee of compensation for the significant investment of time, money and effort the case would require).  In undertaking that responsibility, Class Counsel was obligated to assure that sufficient firm resources were dedicated to the prosecution of the Action and to fund the out-of-pocket expenses required to prosecute such litigation.  This was effectuated through the use by Plaintiffs' counsel of a line of credit, which

allowed counsel to forego hourly employment and to apply firm resources to this matter instead.  Class Counsel also faced the financial resources and legal talent of a large corporation and their defense firm.  Thus, the risk was increased because of the resources available to the opposing parties.  *Brewer v. Southern Union Co.*, 607 F. Supp. 1511, 1531 (D. Colo. 1984);  *Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 8, 13 (E.D. Pa. 1980).

### 5.      The Reaction of the Class

The Court should also consider Class Members' reactions to the attorneys' fees and expenses which counsel seek. *In re Heritage Bond*, 2005 WL 1594403, at *21.  The Notice Packet sent to Class Members gave specific notice that Class Counsel would request attorneys' fees in the amount of $185,000.  Importantly, no class members objected to this request for fees.  Lenhart Decl. ¶ 12.

### 6.      Comparison with Counsel's Lodestar

"Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a 'cross-check' on the reasonableness of the requested fee." *In re Heritage Bond*, 2005 WL 1594403, at *22 (citing *Vizcaino*, 290 F.3d at 1050;  *Fischel v. Equitable Life Assurance Society of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  Morris and Associates expended 543 hours as of the approximate time of filing this motion for final approval.  Morris Decl. ¶ 22.  Class Counsel's billing rate is commensurate with attorney's with similar experience in San Francisco and with defense counsel's billing rate.  Morris Decl. ¶ 19.  The total billed is $189,945.00, slightly more than the percentage of the recovery requested (25%), thereby making the requested fee award of $185,000 both modest and reasonable.

As each factor supports Class Counsel's award of attorneys' fees, Class Counsel requests that the Court approve an award of attorneys' fees of $185,000, which is 25% of the Total Settlement Amount, and costs in the amount of $10,000. Morris Decl. ¶ 24, Exh. 2.

## VI.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class as requested by the parties in accordance with the terms of the Settlement.  The Court should now grant final certification of the Settlement Class pursuant to Rule 23 for settlement purposes only, for all the reasons set forth in the Motion for Preliminary Approval.

## VII.  CONCLUSION.

For all the foregoing reasons, the Court should now grant final approval of the Settlement.

DATED:    March 8, 2010                        MORRIS and ASSOCIATES

                                    By:     /s/
                                         STEPHEN B. MORRIS
                                         Attorneys for Plaintiffs

DATED:    March 8, 2010                        LITTLER MENDELSON, APC

                                    By:     /s/
                                         LAURA E. HAYWARD
                                         R. BRIAN DIXON
                                         Attorneys for Defendant