1  Stephen B. Morris (SBN 126192)
**MORRIS and ASSOCIATES**
2  444 West C Street, Suite 300
San Diego, California 92101
3  (619) 239-1300

4  Walter Haines, Esq. (CSB #71075)
**UNITED EMPLOYEES LAW GROUP**
5  65 Pine Ave, #312
Long Beach, California 90802
6  Telephone:(877) 696-8378
Facsimile:   (562) 256-1006

7  Attorneys for Plaintiffs

8
R. Brian Dixon, Bar No. 076247
9  Laura E. Hayward, Bar No. 204014
**LITTLER MENDELSON, APC**
10  650 California Street, 20ᵗʰ Floor
San Francisco, CA 94108
11  Telephone: (415) 433-1940

12  Attorneys for Defendant

13
**UNITED STATES DISTRICT COURT**
14
**NORTHERN DISTRICT OF CALIFORNIA**
15

16
RICHARD HOM, an individual on          ) CASE NO. C 08-03756 JL
17  behalf of himself and JUSTIN          )
KELLEY, an individual, on behalf of    )
18  himself, and on behalf of all persons )
similarly situated,                    ) DECLARATION OF STEPHEN B.
19                                        ) MORRIS IN SUPPORT OF MOTION
Plaintiff,                    ) FOR FINAL APPROVAL OF CLASS
20                                        ) ACTION SETTLEMENT
vs.                                    )
21                                        ) Date:      April 14, 2010
                                       ) Time:      9:30 a.m.
22  DHL EXPRESS (USA), INC., an Ohio     ) Room:      Courtroom F
corporation conducting business in the ) Judge:     Honorable James Larson
23  State of California, and Does 1 to 10. )
                                       )
24  Defendants.                    )
                                       )
25

26       I, Stephen B. Morris, declare as follows:

27       1.       I am an attorney at law duly licensed to practice in the State of

28  California and the U.S. District Courts in California, and am one of the attorneys

representing Plaintiffs Richard Hom and Justin Kelley against Defendant DHL

---

1  Express (USA), Inc. ("DHL") in this action. I make this declaration in support of

2  the Joint Motion for Final Approval of Class Action Settlement. I have personal

3  knowledge of the facts set forth below, except as to such matters as may be stated

4  on information and belief, and if called upon as a witness, I could and would

5  competently testify thereto.

6

7  **Background of Action**

8      2.      On August 6, 2008, Plaintiffs Richard Hom and Justin Kelley filed a

9  Complaint in the Northern District of California against DHL on behalf of

10  themselves and all other Field Service Supervisors who worked at DHL

11  nationwide. In their Complaint, Plaintiffs alleged that DHL incorrectly classified

12  the Field Service Supervisor position as exempt from payment of overtime under

13  California law and Federal law. Due to this alleged misclassification, Plaintiffs

14  alleged they were entitled to overtime pay under the Fair Labor Standards Act, and

15  California Labor Code sections 510, 515, 1194, and 1198; compensation for missed

16  meal and rest periods pursuant to California Labor Code sections 226.7 and 512;

17  waiting time penalties according to Labor Code section 201-203; penalties for

18  inaccurate itemized wage statements pursuant to Labor Code section 226(a); and

19  restitution and injunctive relief in accord with California Business and Professions

20  Code section 17200; as well as interest and attorneys fees. While the Complaint

21  was initially filed on behalf of a nationwide class, on May 15, 2009, the Court

22  signed an Order Dismissing the FLSA Cause of Action and references to a

23  nationwide class pursuant to the parties' joint request. Thereafter, the lawsuit has

24  been pursued on behalf of California employees only.

25      3.      Plaintiffs contend that they were incorrectly classified as exempt

26  employees. They contend that they did not meet the test for the exemption in part

27  because they did not have sufficient independent judgment and discretion in

28  carrying out their job duties and because they did not spend more than 50% of their

---

Hom, et al. v. DHL                    2  SBM Dec in Support of Mtn for Final Approval

1    time performing exempt tasks.  Plaintiffs claimed that as all Field Service

2    Supervisors were performing essentially the same job functions their claims were

3    appropriate for class treatment.

4         4.      At all points during this litigation, DHL disputed, and it continues to

5    dispute, Plaintiffs' allegations, expressly denying any liability for any of the claims

6    that Plaintiffs or the Class have raised or could have raised.

7         5.      Although I believe that Plaintiffs would be able to certify the Class, I

8    am cognizant of the significant legal uncertainties associated with class action

9    misclassification cases.  Such claims can be factually complex and require

10   protracted litigation to resolve.  Moreover, DHL through its counsel, has presented

11   several good faith objections to Plaintiffs' ability to certify the class. For example,

12   DHL maintains that resolution of these issues requires an individualized analysis of

13   how each class member carries out his or her job duties and responsibilities,

14   because each Field Service Supervisor has a unique experience based upon the

15   location and size of their station, their work schedule, the management style of

16   their supervisor, the number of employees they supervise and the presence of

17   unionized employees and/or independent contractors at their station.

18        6.      While I also believe that Plaintiffs could prevail on the merits of their

19   claims, I recognize that it would require a considerable showing in order to

20   overcome DHL's significant defenses to their misclassification claim.  To begin,

21   DHL has indicated that many of the DHL locations are covered by collective

22   bargaining agreements containing a work preservation clause.  As a result, non-

23   bargaining unit employees, such as the Field Service Supervisors, are prohibited

24   from performing non-exempt bargaining unit work such as moving, sorting or

25   driving packages or dealing with routine customer inquiries.  Second, DHL

26   presented evidence that the company's expectation is that Field Service

27   Supervisors are performing an exempt job.  The Field Service Supervisor job

28   description and management training, the annual reviews which assess their

---

Hom, et al. v. DHL                          3    SBM Dec in Support of Mtn for Final Approval

abilities with respect to performance of exempt job functions, coupled with the

deposition testimony of DHL managers Jeff Funk and John Fasullo make it clear

that DHL considers the Field Service Supervisor part of the station's management

team.  Third, DHL presented evidence that many Field Services Supervisors

interviewed by counsel attested to the fact that they were indeed performing their

jobs in an exempt manner.  DHL argued that to the extent that Plaintiffs contend

they spent significant time performing non-exempt work, they did so in

contravention of the company's legitimate and communicated expectations.

### Settlement Discussions

7.      After completing several key depositions and engaging in initial

written discovery, the Parties agreed to engage in a mediation.  In anticipation of

the mediation, DHL Counsel provided me with information regarding the number

of putative Class Members, their average rate of pay, and the average number of

weeks each putative Class Member worked within the limitations period.

8.      On August 6, 2009, the Parties attended a mediation session presided

over by Michael Loeb of JAMS, a mediator with significant experience in wage

and hour class actions.  Each Party was represented by their respective counsel

during the good-faith negotiations facilitated by Mr. Loeb.  While the Parties were

unable to reach agreement at the mediation, the Parties continued to negotiate for

several weeks following the mediation, assisted by Mr. Loeb.  At the conclusion of

the additional negotiations, on September 4, 2009, the Parties signed a

Memorandum of Understanding outlining the key elements of the agreed upon

settlement.

### Investigation By Plaintiffs' Counsel

9.      I have conducted a thorough investigation into the facts of this case,

and have diligently pursued an investigation of the Class Members' claims against

---

1   DHL, including (1) interviewing Class Members and analyzing the results of Class

2   Member interviews; (2) reviewing relevant documents; (3) researching the

3   applicable law and the potential defenses; and (4) taking the depositions of DHL

4   managers.  Based on this, I am of the opinion that the Settlement is fair, reasonable

5   and adequate and is in the best interest of the Class in light of all known facts and

6   circumstances, including the risk of significant delay, defenses asserted by DHL,

7   and potential appellate issues.

8

9                      **Background of Class Counsel**

10          10.    I am experienced in class action wage-and-hour litigation and have

11   collectively represented more than 50 classes in similar cases.  I have significant

12   knowledge of the relevant facts given my firm's independent investigation prior to

13   mediation and the disclosures provided by DHL in anticipation of that proceeding.

14   My general background, qualifications and experience are attached as Exhibit "1".

15

16                         **Stephen B. Morris**

17          11.    I received my B.S. from the University of Southern California and my

18   J.D. from The University of San Diego.  I was admitted to the California State Bar

19   in 1987 and have extensive experience in employment law disputes. I have been

20   lead counsel in approximately 15 prior employment class actions cases that have

21   been litigated to resolution and I am currently lead counsel in approximately 15

22   other wage and hour class action lawsuits.  I have worked on many class action

23   matters in the capacity as class counsel.  Attached as Exhibit 1 is my firm's resume

24   with a list of class actions where I was lead or co-lead counsel.

25

26

27                            **Walter Haines**

28          12.    I am informed and believe that:

            a.     Mr. Haines received his B.A. from Pace University and his law

---

Hom, et al. v. DHL                        5   SBM Dec in Support of Mtn for Final Approval

1  degree from the San Fernando Valley College of Law. He has been a practicing

2  attorney for more than 30 years.

3          b.      In February 2005, he created the law firm known as United

4  Employee Law Group for the sole purpose of prosecuting wage-and-hour claims on

5  behalf of employees.

6          c.      He has represented well over 500 clients in wage-and-hour

7  disputes and is currently co-counsel on numerous wage-and-hour class actions.

8

9                    **Fairness and Reasonableness of Settlement**

10         13.     I believe that the Settlement is fair and reasonable and warrants

11  approval by the Court. The Settlement resulted after arms' length settlement

12  negotiations under the supervision of Michael Loeb of JAMS, an experienced

13  mediator, who recommended the Settlement.

14         14.     The Settlement is fair and reasonable because it provides substantial

15  and immediate benefits to the Class Members. The Settlement is jointly presented

16  as the product of extensive arms' length negotiations by experienced counsel on

17  both sides after sufficient exchange of information to allow both sides to recognize

18  the strengths and weaknesses of each other's positions. In calculating the

19  appropriate settlement amount, the Parties had sufficient information, and had

20  conducted an adequate investigation to allow them to make an educated and

21  informed analysis and conclusion.

22         15.     Although I believe that Plaintiff's claims are meritorious and that

23  Plaintiffs would eventually prevail, I have also considered factors such as the

24  substantial costs of continued litigation and the possibility that the case, if not

25  settled now, might not result in any recovery or might result in a recovery several

26  years from now that is less favorable to the Class than that offered by the

27  Settlement. In light of such considerations, I am satisfied that the terms and

28  conditions of the Settlement are fair, reasonable and adequate and that the

1   Settlement is in the best interests of the Classes.

2

3                    **Plaintiffs' Class Representative Payment**

4          16.    As part of the Settlement, Plaintiffs Hom and Kelley each seek a class

5   representative payment of Eight Thousand Five Hundred Dollars ($8,500) in

6   recognition of their time and efforts on behalf of the Class and the risk they

7   assumed of costs and other liabilities if the case proved unsuccessful.  The

8   Plaintiffs supplied my office with relevant documents, made themselves available

9   for numerous detailed and lengthy discussions and supplied invaluable information

10  and appeared for their depositions.  These two (2) Plaintiffs went well beyond what

11  was required of them, as they performed their own independent research and

12  surveys of past employees.  I estimate that each of them spent 50 - 60 hours of their

13  time (including deposition time) on this matter.

14

15              **Class Counsel's Attorneys' Fees, Expenses, and Costs**

16         17.    As part of the Settlement, Class Counsel requests an award of

17  attorneys' fees of One Hundred Eighty Five Thousand Dollars ($185,000).  This is

18  equal to 25% of the Seven Hundred and Forty Thousand Dollar ($740,000)

19  Settlement Amount, under the "percentage of the benefit" theory.  This requested

20  fee falls on the lower end of the historical range of attorneys' fee awards, which is

21  generally from 20% to 50% and is equal to the Ninth Circuit's benchmark for such

22  fees.  The requested fee is fair compensation for undertaking complex, risky, and

23  time-consuming litigation on a contingent basis.

24         18.    The requested fees and costs are fair compensation for undertaking

25  complex, risky, expensive, and time-consuming litigation solely on a contingency

26  basis, which have resulted in appropriate benefits to the class members.  My firm

27  has borne the entire risk and costs of litigation for this case, all on a purely

28  contingent basis.  This has been possible through the use of my firm's line of credit

1    which allowed me to devote my time and that of my firm, with all of its resources,

2    to this matter instead of hourly work which would otherwise be required to fund

3    my office.  In light of the substantial benefits to the class members and the

4    contingent nature of the action, the requested attorneys' fees and costs are

5    reasonable.

6         19.    My normal hourly rate for class action litigation is $545 per hour,

7    which, based on surveys conducted by me is a rate consistent with other class

8    action plaintiff's counsel with similar experience practicing in San Francisco.  I

9    was the primary counsel with responsibility for this class case.  In addition, I am

10   informed and believe that my hourly rate is commensurate with defense counsel's

11   billing rate.  My hourly rate has been approved in numerous class actions,

12   including *Lee v. Timberland*, Northern District of California, Case No. C07 02367

13   JF; *Egan v. Fidelity Information Services*, Central District of California, Case No.

14   CV07-6374; *Lopez, et al. v. KB Home*, Los Angeles Superior Court, Case No. BC

15   381211; *Ulloa v. Nordstrom, Inc.*, San Diego Superior Court, Case No. 37-2007-

16   00068014-CU-BT-CTL; *Perez, et al. v. Personal Touch*, Orange Superior Court,

17   30-2008-00180045[1].

18        20.    My firm is a boutique firm. We limit our case intake to between 10-15

19   cases at any one time.  Most of the work is performed by me, except for initial

20   discovery preparation, discovery responses, initial case intake documentation and

21   other work, mostly discovery related, which I assign to my paralegal staff and

22   supervise accordingly.

23        21.    Here, the case was originally accepted by Walter Haines at United

24   Employees Law Group.  That firm performed its standard screening and intake

25   procedures which I am informed and believe took approximately 5 hours of

26   attorney time and 4 hrs of paralegal time.  Mr. Haines bills at a rate of $350 per hr.

27

28   [1]    My hourly rate was $525 per hour until January 1, 2009 when it increased to $545 per
     hour.

His Case Intake Manager bills at $210 per hr.  The Haines lodestar is thus $2,790.00.  The Haines firm specializes in class action employment matters and currently has over 50 active cases in which they are co-counsel.  Because my firm conducted its own intake review, we have not included this amount in the total lodestar.

22.    The matter was referred to my firm and we conducted our own independent evaluation of the case, researching the applicable law, meeting with the clients, and searching out data regarding the target defendant, including running a litigation search.  I have spent 243 hours on this case, which break down as follows: 15 hours pre-litigation research, speaking with the clients and co-counsel; 37.5 hours researching, preparing and reviewing pleadings, such as the motions for preliminary and final approval; 11 hours reviewing documents produced by opposing counsel and following up regarding the documents with our clients; 11.25 hours of telephone, letter and e-mail conferences with opposing counsel, potential experts and the Plaintiffs; 51.5 hours researching the specific exemption issues at issue here, and performing the initial prepatory work for the class certification motion, which was not filed, researching and reviewing legal memoranda from co-counsel; 12 hours on staff meetings (conducted weekly) reviewing assignments and internal work product, correspondence; 5.75 hours preparing discovery demands; 23.25 hours communicating with clients; 45.75 hours preparing for, traveling to and from and attending the depositions and court appearances (this includes an estimate of the time for attending the Final Approval Hearing); 22.75 hours in preparation for and attending the mediation; and 7.25 hours following up with the mediator and opposing counsel after the mediation.  My head paralegal, Angelina Rudd, whose billing rate is $210.00 per hour, has spent 178 hours on this matter primarily conducting interviews of potential witnesses and reviewing and summarizing those interviews and research.  Jenna Sarinas, a paralegal in my office whose billing rate is $165.00, has spent approximately 122 hours on this case

1  performing tasks at my direction, principally relating to discovery and review and

2  summary of documents.  My firm's lodestar is $189,945.00.

3      23.    In the nineteen months since we first received the information on this

4  case on July 14, 2008, I have billed a total of 243 hours on this matter for a lodester

5  of $132,435.00.  The total billed by my staff is $57,510.00, which, as set forth

6  above, was for litigation support, primarily regarding discovery and compilation of

7  data.  The total of these amounts is $189,945.00.  The requested fee in the sum of

8  $185,000.00 is fractionally less than our lodestar.

9      24.    My firm has incurred out of pocket costs in the amount of $10,470.40.

10 However, we have agreed to limit our reimbursement reuqest to $10,000.00.

11 Therefore, we request expenses in the amount of $10,000.00.  A detailed listing of

12 those expenses is attached hereto as Exhibit "2".

13      I declare under penalty of perjury under the laws of the United States

14 that the foregoing is true and correct.

15      Executed on March 8, 2010, at San Diego, California.

16

17

18                    /s/
                    Stephen B. Morris

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# MORRIS AND ASSOCIATES

**444 West C Street, Suite 300**
**San Diego, CA 92101**
**Tel: (619) 239-1300**
**Fax: (619) 234-3672**

## FIRM RESUMÉ

Morris and Associates is a full-service law firm handling cases involving consumer class actions, insurance bad faith, employment claims, serious personal injury, and complex business litigation. The firm works primarily on a contingency basis. In the past ten years, a substantial portion of Morris and Associates' practice has been representing consumers in class actions. A list of past and pending class actions litigated by Morris & Associates is attached.

## ATTORNEY BIOGRAPHY

**Stephen B. Morris,** the Principal of the Firm, has litigated multiple consumer class actions across the country since 1987, with his principal area of practice in California since 1986. Mr. Morris graduated from the University of San Diego School of Law in 1986, after obtaining his bachelor's degree at the University of Southern California in 1982. Having represented clients and having served as lead counsel in multiple consumer class actions, Mr. Morris has a proven track record of obtaining significant results by settlement, judgment or jury verdict.

# MORRIS AND ASSOCIATES

### *Past and Pending Class Actions*

Albaisa v. Sprint, San Diego Superior Court, Case No. GIC 795021

Blando v. Nextel, Western District of Missouri, Case No. 02-0921-FJG

Caushon v. General Motors, San Diego Superior Court, Case No. GIC 806975

Crane v. Bio-Hydration, San Diego Superior Court, Case No. GIC 822855

Santone v. AT&T, San Diego Superior Court, Case No. 717114 consolidated with Sparks v. AT&T, U.S. District Court of Illinois Case No. 96-LM-983

Hart v. U.S. Tobacco, Los Angeles Superior Court, Case No. GIC BC 278460

Heon v. Samsung, San Diego Superior Court, Case No. GIC 810057

Michaelson v. Sprint Telephony PCS, et al., San Diego Superior Court, Case No. GIC 817774

Palacios v. Pacific Bell, San Diego Superior Court, Case No. GIC 760321

Peralta v. Hyatt Corp., San Diego Superior Court, Case No. 767837

Potter v. Zodiac, San Diego Superior Court

Whitney v. Alltel Communications, Inc., Circuit Court of Cole County, Missouri, Case No. 02CV326-131

Schiff v. EON, San Diego Superior Court, Case No. N82633

Ralphs v. Blockbuster, Inc., San Diego Superior Court, Case No. GIC 736128

Padilla, et al. v. Kraft, Orange County Superior Court, Case No. 07CC00009

Lee v. Timberland, Northern District of California, Case No. C07 02367 JF

Cantey, et al. v. Brinks, Los Angeles Superior Court, Case No. BC364638

Egan v. Fidelity Information Services, Central District of California, Case No. CV07-6374

Lopez, et al. v. KB Home, Los Angeles Superior Court, Case No. BC 381211

Ulloa v. Nordstrom, Inc., San Diego Superior Court, Case No. 37-2007-00068014-CU-BT-CTL

Human v. Acosta, Inc., USDC, SD California, CV 10-237

Jarratt v. American Express, USDC, SD California, 09-CV-425

Stryuk v. AT&T Mobility, USDC, SD California, 07-CV-1314

Gusman v. AT&T Moility, San Diego Superior Court, 37-2009-00100556-CU-BC-CTL

Respinto v. AT&T Mobility, USDC, ND Georgia, 09-CV-3380

Simon, et al. v. AT&T Mobility, USDC, CD California, CV-10-0791

Sipple v. AT&T Mobility, USDC, SD California, 10-CV-0184

Moss v. Bakers Footwear, USDC, CD California, 08-CV-345

Sarinas v. Best Buy, San Diego Superior Court, 37-2009-00086540

Hom, et al. v. DHL, USDC, ND California, C 08-03756

Kunze v. Guitar Center, San Diego Superior Court, 37-2009-00096940

Englaterra v. Lifesteps Foundation, Los Angeles Superior Court, BC410581

Coy v. Mapleton Communications, Monterey Superior Court, M100046

Mann v. McMillan, San Diego Superior Court, 37-2009-00101911

Alfi v. Nordstrom, USDC, SD California, 09-CV-1249

Perez, et al. v. Personal Touch, Orange Superior Court, 30-2008-00180045

Marilao v. PetSmart, San Diego Superior Court, 37-2009-00086842

Gilchrist v. Silver Star, Ventura Superior Court, 56-2009-00356361

Cornacchia v. Spot Runner, Los Angeles Superior Court, BC 414895

Westling v. Subway, USDC, SD California, 09-CV-2630

Payne v. Super Suppers, Orange Superior Court, 30-2009-00120074-CU-BT-CJC

Valenzuela v. Time Warner, USDC, CD California, CV 09-8937

Borrero v. The Travelers Indemnity Co., USDC, ED California, 10-CV-00322

O'Shea v. VTEX Global, San Diego Superior Court, 37-2009-00101937-CU-OE-CTL

Rudd v. American Express, USDC, SD California, 09-CV-930

Venegas v. WRM Security, San Diego Superior Court, 37-2010-00085793-CU-BT-CTL

Block v. Wyndham, San Francisco Superior Court, CGC-09-495517

Barclay v. VISA USA, USDC, SD California, 09-CV-02932

# EXHIBIT 2

**Morris and Associates**
444 West C Street, Suite 300
San Diego, CA  92101
Phone:  (619) 239-1300
Fax:  (619) 234-3672

Expenses
Hom, et al. v. DHL

| DATE | EXPENSE | AMOUNT |
|------|---------|--------|
| 07/30/08 | Clerk U.S. District Court | $350.00 |
| 08/13/08 | Diversified Legal | $32.50 |
| 08/18/08 | Diversified Legal | $52.50 |
| 04/16/09 | JAMS, Inc. | $3,175.00 |
| 07/03/09 | Corporate Consult re: DHL corporate structure | $1,500.00 |
| 07/15/09 | American Express (Depo expenses) | $620.71 |
| 07/23/09 | Sarnoff Information Technologies, Inc. | $455.50 |
| 07/29/09 | Sarnoff Information Technologies, Inc. | $707.20 |
| 08/12/09 | JAMS, Inc. | $257.85 |
| 08/14/09 | American Express (mediation expenses) | $818.34 |
| 08/14/09 | American Express (depo transcripts) | $612.80 |
| 08/30/09 | American Express (mediation expenses) | $315.49 |
|  | Cash Expenses for mediation & depos | $265.00 |
|  | Copying fees (2,468 copies @$.25 each) | $617.00 |
|  | Postage | $144.14 |
|  | On-line Research | $546.37 |

**Total**      $10,470.40